# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

ENRIQUE ORTIZ, a/k/a Enrequie Ortiz,

                            Plaintiff,

      vs.                                 9:15-CV-291
                                           (MAD/ATB)

ALBERT PRACK,

                            Defendant.

---

ENRIQUE ORTIZ, Plaintiff pro se
MARK G. MITCHELL, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendant denied him due process relative to the appeal of a disciplinary hearing held on August 29, 2011. (Complaint ("Compl.") at ¶ 7) (Dkt. No. 1). Plaintiff seeks substantial monetary relief. (Compl. ¶ 8).

Presently before the court is defendant Prack's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 27). Plaintiff filed a response in opposition to the motion, defendant filed a reply, and plaintiff has filed a sur-reply. (Dkt. Nos. 32, 33, 36). For the following reasons, this court agrees with defendant and will recommend dismissing the complaint in its entirety.

# DISCUSSION

## I.   Facts

Plaintiff alleges that on August 24, 2011, while he was housed at Coxsackie Correctional Facility ("Coxsackie"), he was called to see a sergeant at the Central Gate. (Compl. at ¶ 4, p.1).[1]  Plaintiff states that he was searched prior to meeting with the sergeant.  Plaintiff states that he met with Sergeant "Young,"[2] who asked plaintiff if he was acquainted with Inmate "'Jeffrey T. Russell.'" (*Id.*)  Plaintiff told the sergeant that he did not know "Russell," but may have "known him by another name."  Sergeant Yung then produced a $70.00 money order, made out to the plaintiff, with a note that said: "'Thank you for the cigarettes, Russell.'" (*Id.*)  The sergeant told plaintiff that the money order and the note were turned over to the Captain's office by the Correspondence Department which had commenced an investigation on August 12, 2011. (*Id.*)

Plaintiff was escorted back to his cell and placed in "keeplock."[3]  Plaintiff states that while he was being taken back to his cell, he told Sergeant Yung that he had purchased nine packs of cigarettes from the commissary store. (*Id.*)  On August 25,

---

[1] Plaintiff has used a form-complaint for cases brought under section 1983.  However, he has numbered the pages of his fact section (¶ 4 of the form-complaint) separately, beginning with page 1.  These pages are not part of the form-complaint, and do not match the page numbers assigned by the court's electronic filing system ("CM/ECF").  Because plaintiff has numbered his pages clearly at the bottom, this court will use plaintiff's numbering system to refer to the pages of his factual statement.

[2] Although plaintiff spells this name "Young" it is clear from the documents submitted with the summary judgment motion that the sergeant spells his name "Yung." (Dkt. No. 23-3 at 19).  The court will use the correct spelling of this individual's name.

[3] "Keeplock" is confinement to one's own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

2011, plaintiff was issued a misbehavior report, charging him with three disciplinary rule violations: unauthorized exchange; smuggling; and violating facility correspondence procedures. (*Id.*)

Plaintiff alleges that, later the same day, his employee assistant came to plaintiff's cell to ask what plaintiff needed to prepare for his upcoming disciplinary hearing. (*Id.*) Plaintiff asked for "all of the documentary evidence that was generated with the misbehavior report." (*Id.* at 2). Plaintiff's assistant told him that the evidence would be given to plaintiff at the hearing, but "not one day before." (*Id.*)

On August 29, 2011, plaintiff attended a superintendent's hearing before Hearing Officer ("HO") Eric Gutwein. (*Id.*) Plaintiff asked HO Gutwein for the "documentary evidence," but was told that the only "documentary evidence" was the misbehavior report. Plaintiff states that he asked for two witnesses: Franklin Russell and Jeffery T. Russell.[4] Plaintiff claims that he was denied "the witnesses." (*Id.*) However, at his deposition,[5] plaintiff stated that inmate Russell testified at his disciplinary hearing that his father sent plaintiff the money.[6] (Pl.'s Dep. at 29-30). Plaintiff argued that it was impossible for Jeffrey Russell to have sent plaintiff the check because Jeffrey Russell was an inmate. Plaintiff testified that he asked the hearing officer to produce Franklin

---

[4] Franklin Russell was the father of Inmate Jeffery T. Russell. (Compl. at ¶ 4, p.2; Pl.'s Dep. at 48) (Dkt. No. 27-2).

[5] Plaintiff was deposed on March 14, 2016. (Pl.'s Dep.) (Dkt. No. 27-2).

[6] Thus, it is clear that plaintiff was only denied one witness   Franklin Russell. The documents from plaintiff's disciplinary hearing support this fact. (Def.'s Ex. 2 at 19) (Hearing Record Sheet) (Dkt. No. 27-3).

Russell - inmate Russell's father - as a witness, but HO Gutwein denied plaintiff's request for "no reason." (Pl.'s Dep. at 48).

Plaintiff was found guilty of all the violations and received the following sanctions: six months confinement in the Special Housing Unit ("SHU"); six months loss of package, commissary, and telephone privileges; and six months recommended loss of good time. In addition, the money order was confiscated. (*Id.*)

Plaintiff appealed the hearing officer's determination, and on November 16, 2011, defendant Prack affirmed the determination of guilt, but reduced the penalties to four months. (*Id.*) Plaintiff states that, on March 27, 2012, he filed a "writ of mandamus" in the Supreme Court of Albany County, seeking review of the disciplinary determination. (*Id.*) The proceeding in Albany County Supreme Court was ultimately dismissed as moot when defendant Prack reversed the disciplinary determination and expunged plaintiff's records based on the "'failure to maintain a complete electronic recording.'" (*Id.* at 3). Plaintiff states that defendant Prack was fully aware when he affirmed the disciplinary finding on November 16, 2011 that the electronic recording was incomplete, but he failed to remedy the situation at that time, causing plaintiff to spend another 125 days in SHU, without privileges. (*Id.* at 3).

During his deposition, plaintiff stated that his claim against defendant Prack is that he did not reverse the disciplinary determination when he had the first opportunity. (Pl.'s Dep. at 21). Plaintiff testified that defendant Prack "had the opportunity to see that there was a big mistake and that Misbehavior Report was wrong and it was fabricated." (*Id.*)

Defendant has included the available documents from the disciplinary proceedings, including a copy of the money order, and the administrative appeal and state court Article 78 proceeding documents. (Dkt. Nos. 27-3 – 27-9). Rather than summarizing these documents at the outset, the court will discuss the defendant's exhibits as necessary in the course of analyzing the summary judgment motion.

## II. **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III.  Personal Involvement

### A.  Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.*  *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*,  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

## 2.    Application

Plaintiff has named only Albert Prack as a defendant in this action. Defendant Prack is the Director of Special Housing and Inmate Discipline in Albany, New York. He does not work at any particular correctional facility. Defendant argues that he was not "personally involved" in any alleged constitutional violation. It is clear that the defendant was not involved in the hearing itself. However, plaintiff argues that the appeal was part of the "process" that was due to plaintiff, and defendant Prack "knew" about the alleged violations, but failed to reverse the disciplinary determination when he had his first opportunity to do so. Plaintiff argues that defendant Prack's personal involvement was shown by his failure to remedy the wrong after learning of it through

plaintiff's appeal. Assuming the validity of the *Colon* factors listed above, plaintiff

argues that Prack's personal involvement has been established. This court agrees.

Courts in the Second Circuit appear to be split over whether an allegation that a

defendant affirmed a disciplinary determination is sufficient to establish personal

involvement by the supervisory official. *Samuels v. Fischer*, __ F. Supp. 3d __, __, No.

13-CV-8287, 2016 WL 827781, at *11 (S.D.N.Y. March 2, 2016) (citing *Scott v.*

*Frederick*, No. 13-CV-605, 2015 WL 127864, at *17 (N.D.N.Y. Jan. 8, 2015) (mere

"rubber-stamping" of a disciplinary proceeding is insufficient to plausibly allege

personal involvement); *Hinton v. Prack*, No. 12-CV-1844, 2014 WL 4627120, at *17

(N.D.N.Y. Sept. 11, 2014) (mere rubber-stamping is insufficient to allege personal

involvement); *Brown v. Brun*, No. 10-CV-397, 2010 WL 5072125, at *2 (W.D.N.Y.

Dec. 10, 2010) (liability can be found if the official proactively participated in

reviewing the administrative appeal as opposed to "mere" rubber-stamping); *Tolliver v.*

*Lilley*, No. 12-CV-971, 2014 WL 10447163, at *12 (S.D.N.Y. Oct. 24, 2014) ("Prack

received [the plaintiff's] grievance, reviewed it and acted on it, personally.

Accordingly, the allegations against Prack are sufficient to state personal involvement

and dismissing the claims against him based on this ground is not warranted . . . ."),

*adopted sub nom. Tolliver v. Skinner*, No. 12-CV-971, 2015 WL 5660440 (S.D.N.Y.

Sept. 25, 2015); *Murray v. Arquitt*, No. 10-CV-1440, 2014 WL 4676569, at *12

(N.D.N.Y. Sept. 18, 2014) ("The affirmation of an allegedly unconstitutional

disciplinary hearing appears to establish personal involvement."); *Delgado v. Bezio*,

No. 09-CV-6899, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011) ("[I]t cannot be

said that the *Iqbal* holding precludes liability where, as is alleged here, supervisory personnel affirmed a decision that they knew to have been imposed in violation of Plaintiff[']s due process rights, thus continuing a deprivation of liberty without due process of law").

After considering the above cases, the court in *Samuels* held that the "better view is that an affirmance of an unconstitutional disciplinary proceeding can be sufficient to find personal involvement." *Samuels*, *supra* at *12. The court made this finding based upon its determination that "it is difficult to imagine how a prison official could be deemed uninvolved where that official considered the inmate's objections and had the power to abrogate or preserve punishment, that allegedly, was improperly imposed." *Id*. (citing *Tolliver*, 2014 WL 10447163, at *12) (finding personal involvement where a prison official 'reviewed' and 'acted on' an inmate's grievance)). The court in *Samuels* denied a motion to dismiss arguing the lack of personal involvement, distinguishing cases in which the supervisory official delegated the review of an appeal to another. *Id*. at *9 (dismissing claim against an individual who "merely passed along their appeals for others to consider).

This court agrees with *Samuels* and the cases cited above, finding that if the official ***personally*** acted upon the appeal, the plaintiff has sufficiently alleged personal involvement by that official. In this case, defendant Prack's name appears at the bottom of the appeal in which the determination was affirmed, but the sanctions reduced. Defendant Prack's name also appears at the bottom of the appeal in which the determination was reversed and plaintiff's records expunged. (Dkt. No. 27-3 at 3, 4).

From the documents submitted, it appears that defendant Prack personally reviewed the appeal and would have been "personally involved." Defendant Prack has not filed a declaration or affidavit stating that he did not personally review the plaintiff's appeal. However, even if this court finds that plaintiff has sufficiently alleged the personal involvement of defendant Prack, the complaint may be dismissed on the merits of the due process claims.

## IV.   Due Process

### A.   Legal Standards

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The Second Circuit has explicitly avoided a bright line rule that a certain period of confinement in keeplock or a segregated housing unit automatically gives rise to due process protection. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v.*

*Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Instead, cases in this circuit have created guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed. *Palmer v. Richards*, 364 F.3d 60, 64-66 (2d Cir. 2004).

A confinement longer than an intermediate one, and under "normal SHU conditions" is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under *Sandin*." *Colon*, 215 F.3d at 231 (finding that a prisoner's liberty interest was infringed by 305-day confinement). "Where the plaintiff was confined for an intermediate duration–between 101 and 305 days– . . . a district court must "make a fact-intensive inquiry," . . . examining "the actual circumstances of SHU confinement" in the case before it . . . ." *Palmer v. Richards*, 364 F.3d at 64-65 (citations omitted). Shorter confinements under normal SHU conditions may not implicate a prisoner's liberty interest. However, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer v. Richards*, 364 F.3d at 65 (citations omitted).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380

11

F.3d 57, 69 (2d Cir. 2004) (*citing, inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (*citing, inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

## B. Application

Although plaintiff complains that the hearing officer denied him a witness and that the determination was not supported by sufficient evidence, he has not named the hearing officer as a defendant. Instead, he based his due process challenge on the appeal of his disciplinary hearing, naming Albert Prack as the only defendant. Even though defendant Prack ultimately reversed plaintiff's disciplinary determination and expunged his records, plaintiff argues that the reversal did not come soon enough, causing plaintiff to spend an extra 125 days in SHU.[7] The disciplinary determination was not reversed until after he plaintiff filed an Article 78 proceeding in Supreme Court. The Article 78 proceeding was dismissed as moot based upon the administrative reversal by defendant Prack. (Dkt. No. 27-8 at 2-6). Plaintiff also makes the assumption that defendant Prack "knew" at the time of plaintiff's administrative appeal that there was a "failure to maintain a complete electronic recording." Plaintiff initially claimed only that he was denied due process based upon defendant Prack's failure to

---

[7] Plaintiff's estimate of the "extra" time that he spent in SHU does not make sense. Plaintiff's hearing took place on August 29, 2011 and ended on September 8, 2011. (Def.'s Ex. 2 at 19). He was confined either in keeplock or SHU beginning on August 24, 2011. Plaintiff's SHU sanction was initially six months, and on November 16, 2011, defendant Prack reduced the SHU penalty to four months, which would have ended in December of 2011. When defendant Prack reduced the penalty to four months, plaintiff had already served three months, leaving only an "extra" thirty days for him to serve as the result of defendant Prack's allegedly improper affirmance. In any event, plaintiff appears to have served the full four months in confinement, and the court will assume for purposes of this report, that the 120 days of confinement created a liberty interest under *Sandin*.

12

reverse the disciplinary determination in November of 2011, based on the lack of a complete record. (Compl. ¶ 7). Plaintiff has now expanded his argument to cover additional due process claims – denial of a witness and insufficient evidence. Defendant addressed these additional issues relative to plaintiff's appeal, and plaintiff argued that defendant "waived" any argument on the merits. First, the court will address "waiver," and then the court will also review the merits of the due process claims.[8]

### 1. Waiver

#### a. Legal Standards

While the failure to raise an issue in prior proceedings may waive the assertion of the issue later in the case, an issue is not considered "waived" if a party did not have both an opportunity and an incentive to raise it. *F.T.C. v. BlueHippo Funding, LLC*, No. 08 Civ. 1819, 2015 WL 6830161, at *3 n.2 (S.D.N.Y. Nov. 6, 2015) (citing inter alia *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002)).

---

[8] In his complaint, plaintiff did not appear to be claiming that defendant Prack affirmed the disciplinary hearing, notwithstanding the constitutional violations allegedly committed by the hearing officer (denial of witness and insufficient evidence). Instead, plaintiff seemed to be focusing only on the fact that defendant Prack failed to reverse based on an incomplete record. In the motion for summary judgment, defendant has also argued that the hearing itself comported with due process and that the finding was based upon the requisite amount of evidence. In his response, plaintiff now claims that defendant Prack has "forfeited" his "some evidence" argument because "he" did not raise the defense in the Article 78 proceeding. (Dkt. No. 33 at 7-8). In his response, plaintiff also argues that he was denied a "material witness." (Dkt. No. 33 at 9-11). Thus, now it appears that plaintiff faults defendant Prack for failing to reverse the hearing determination in November of 2011 based on the alleged constitutional violations committed by HO Gutwein. Because of the liberality with which pro se complaints are considered, the court will assume that plaintiff is making both arguments, to the extent that defendant Prack could be liable for failing to remedy the alleged constitutional violations allegedly committed by HO Gutwein. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (pro se pleadings must be construed liberally to raise the strongest arguments they suggest).

13

### b.    Application

Plaintiff argues that defendant has "waived" the "some evidence" and the denial of witness arguments because he did not raise them in the Article 78 proceeding. Defendant has interpreted plaintiff's argument as based upon res judicata or collateral estoppel.  Plaintiff has replied, arguing that defendant is barred from raising his defense under either the concept of "waiver" or res judicata.  Plaintiff is incorrect.

In this case, the Article 78 proceeding was dismissed as moot because plaintiff's disciplinary hearing was administratively reversed before the respondent even answered the petition.  An Article 78 proceeding can afford only injunctive relief, and once the disciplinary hearing was administratively reversed and plaintiff's records expunged, there was no opportunity or incentive for the respondent to "argue" that there was sufficient evidence to find the plaintiff guilty or that plaintiff was not improperly denied a witness.  The Article 78 dismissal was not a decision on the merits.[9]

In addition, the respondent – Brian Fischer – in the Article 78 proceeding was not subject to personal liability.[10]  Thus, there was no incentive for Commissioner Fischer to raise any substantive defenses after the hearing had been administratively reversed based upon a procedural irregularity.  Because there was no opportunity or incentive to raise the defenses in the Article 78 proceeding, defendant Prack did not "waive" his arguments on the merits of plaintiff's due process claims.

---

[9] The court would point out that the administrative reversal was ***not*** on the merits.  Defendant Prack reversed the hearing because the electronic record had not been maintained.  This reversal would have had no effect on whether there was sufficient evidence at the hearing to find plaintiff guilty.

[10] Defendant Prack was not a party to the Article 78 proceeding.

### 2.    Res Judicata/Collateral Estoppel

### a.    Legal Standards

Res judicata includes two concepts: claim preclusion and issue preclusion.  Issue preclusion is also known as collateral estoppel. *Rivera v. City of New York*, 594 F. App'x 2, 5 (2d Cir. 2014).  In claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  Generally, claim preclusion does not apply to bar section 1983 actions after an Article 78 proceeding. *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987); *see also Leo v. N.Y.C. Dep't of Educ.*, No. 13 CV 2271(RJD)(JMA), 2014 WL 6460704, at *4 (E.D.N.Y. Nov. 17, 2014) (res judicata doctrine did not apply to § 1983 claims because plaintiff could not have received damages for violations of his civil rights in his prior Article 78 proceeding).

The doctrine of collateral estoppel provides that once a court has actually and necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted).  Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact

was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel).

### b.    Application

Neither of the above doctrines applies in this action.  The discontinuation or dismissal of a case based on mootness is a determination that the court lacks subject matter jurisdiction, and it is not a final judgment on the merits under both federal and New York State law. *Hell's Kitchen Neighborhood Ass'n v. Bloomberg*, No. 05 Civ. 4806, 2007 WL 3254393, at *4 (S.D.N.Y. Nov. 1, 2007) (citations omitted).  The failure of the Article 78 decision to be "on the merits" precludes the application of either res judicata or collateral estoppel against this defendant.  For collateral estoppel purposes, the sufficiency of the evidence, or any other due process issue, was not "actually litigated" or "actually decided" in the Article 78 proceeding.  No substantive issues were "litigated" at all in the Article 78 proceeding because the case was dismissed as moot.

Res judicata requires that the same parties, or those "in privity" with them,

appear in both actions, and collateral estoppel requires that the party against whom collateral estoppel is used had a "full and fair opportunity" to litigate the issue. The Article 78 proceeding was brought against Brian Fischer for injunctive relief in his "official capacity," and this civil rights action is brought against Albert Prack for damages in his "individual capacity."[11] Contrary to plaintiff's argument,[12] a public official sued in his individual capacity is not considered to be in privity with the government. *Tierney v. Davidson*, 133 F.3d 189, 195 (2d Cir. 1998). Thus defendant Prack, in his individual capacity, was not "in privity" with Brian Fischer for purposes of res judicata. In addition, defendant Prack, who was not a party to the Article 78 proceeding in any capacity, did not have a full and fair opportunity to litigate plaintiff's due process claims. Thus, to the extent that plaintiff is claiming that defendant Prack should not have affirmed the adverse disciplinary determination, defendant Prack is not precluded from raising defenses to the merits of plaintiff's due process claims.

### 3. Merits

#### a. "Written Record"

Plaintiff cites *Wolff* for his argument that a "written record" is necessary for federal constitutional purposes. (Dkt. No. 33 at 4-5). Plaintiff argues that "without the

---

[11] Under New York Law, Article 78 proceedings are limited to issues of whether administrative determinations were made in violation of lawful procedure, were arbitrary and capricious, abused discretion, or were not supported by substantial evidence. *Aguirre v. New York State Police*, 156 F. Supp. 2d 305, 312 n.7 (S.D.N.Y. 2001) (citing N.Y. Civ. Prac. L. & R. §§ 7303(3) and 7404).

[12] Plaintiff argues that defendant Prack was in privity with Brian Fischer because Fischer represented defendant Prack's "interests" in the Article 78 proceeding. However, sued in his official capacity, Brian Fischer did not represent the interests of another officer sued in his "individual capacity." Thus, the defendants were not in privity for purposes of res judicata.

entire record" of the proceeding, "it is impossible to determine whether or not there was 'some evidence' to sustain the original charges." (*Id.* at 5). Plaintiff has mis-read *Wolff*. The language that plaintiff quotes from *Wolff* is referring to the requirement that there be "'a written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 564-65. In this case, the "Statement of Evidence Relied Upon" has been included in the records produced by defendant. (Def.'s Exs. 2, 5) (Hearing Disposition) (Dkt. No. 27-6 at 2 and 27-3 at 18).

The evidence upon which the hearing officer based his decision is written on this form. The form indicates that HO Gutwein relied upon Sergeant Yung's testimony about the letter; inmate Russell's testimony that his father sent the money to plaintiff for cigarettes for Russell; plaintiff's testimony that he was receiving money from inmate Russell's father, and a review of the envelope[13] and the money order made out to plaintiff. *Id.* HO Gutwein states that "substantial evidence" showed that plaintiff violated facility rules. (*Id.*)

Contrary to plaintiff's interpretation of *Wolff*, courts have held that "'[s]ignificantly, *Wolff* did not include electronic recording of a disciplinary hearing among the due process requirements.'" *Scott v. Frederick*, 2015 WL 127864, at *15 (quoting *Ramsey v. Goord*, 661 F. Supp. 2d 370, 393 (W.D.N.Y. 2009)). This is true, notwithstanding New York regulations requiring such a record. *Id.* (citations omitted). Violations of state regulations, which may cause reversal in state court, do not necessarily allege constitutional due process violations. *Id.* (citing inter alia *Holcomb v.*

---

[13] The "note" referred to above appeared on the envelope. (Def.'s Ex. 4) (Dkt. No. 27-5).

*Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (which was also cited in *Ramsey* for the proposition that New York State's regulation requiring that a disciplinary hearing be recorded does not impute a federal constitutional protection)). *See also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502-503 (S.D.N.Y. 2012) ("[A]lthough New York state law 'requires that an electronic record of a disciplinary hearing be maintained, such a record is not constitutionally required.") (citing *Dixon v. Goord*, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002); *Delgado v. Bezio*, No. 09-CV-6899, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011) ("It is well established that an inmate does not have a constitutional due process right to receive a transcript of his disciplinary hearing."); *Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir.1990) ("Violations of state law procedural requirements do not alone constitute a deprivation of due process since federal constitutional standards rather than state law define the requirements of procedural due process.")). Thus, defendant Prack's failure to reverse in November of 2011, based on an inadequate record did not violate plaintiff's constitutional rights.[14] Defendant Prack also argues that plaintiff's due process claims fail on the merits to the extent that plaintiff is trying to assert that defendant Prack improperly affirmed the plaintiff's disciplinary determination in the first instance.

### b. Sufficiency of Evidence

---

[14] Although the court makes no finding in this regard, the court notes that plaintiff makes a very substantial assumption that defendant Prack "knew" in November of 2011 that the electronic record was not "maintained." It is very possible that the electronic recording of the hearing was available in 2011, but was not maintained, was damaged, or was lost by the time that plaintiff filed his Article 78 proceeding in March of 2012 or by the time the response to his Article 78 petition was due.

Plaintiff's interpretation of the sufficiency of evidence standard is also incorrect. As stated above, for federal constitutional purposes, only "some evidence" is required to sustain the disciplinary charges, while New York State requires the disciplinary determination to be supported by "substantial evidence." *Alsaifullah v. Smith*, No. 9:14-CV-1309, 2016 WL 1595391, at *7 (N.D.N.Y. Apr. 20, 2016) (citing *Foster v. Coughlin*, 76 N.Y.2d 964, 965 (1990) (substantial evidence standard in New York State)). The substantial evidence standard is "considerably stricter that the Federal 'some evidence' standard." *Id.* (citing *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

In this case, HO Gutwein stated that he relied upon the misbehavior report, Sergeant Yung's testimony, plaintiff's testimony, Russell's testimony, and the money order itself (Def.'s Ex. 3) (Dkt. No. 27-4), made out to plaintiff and mailed to him with a note on the envelope that said "Thanks for the cigarettes."[15] (Def.'s Ex. 4) (Dkt. No. 27-5). The plaintiff's commissary receipt for nine packs of cigarettes was also made part of the record. (Def.'s Ex. 2 at 28) (Dkt. No. 27-3). Even though plaintiff alleges that Sergeant Yung "made up" the misbehavior report, "it was within the hearing officer's province to assess the credibility of the witnesses." *Id.* (citing inter alia *Johnson v. Goord*, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007)). There is no question

---

[15] Defendant has produced a copy of the envelope. (Dkt. No. 27-5). The note that appears on the copy of the envelope is different from the quoted language from the complaint. (Compl. ¶ 4 at p.5). The note on the envelope states "Thanks for the cigarettes", and the return address, directly underneath states "J.T. Russell, with what appears to be a street address blacked out with a pen and "Newark, N.Y. 14513 written underneath. (Def.'s Ex. 5). The difference in the notes is not material to this court's decision.

that "some" evidence was presented at the hearing to constitutionally justify finding plaintiff guilty of the disciplinary charges.

### b. Denial of Witnesses

Plaintiff requested both inmate Russell and his father, Franklin Russell as witnesses. HO Gutwein allowed inmate Russell to testify but denied plaintiff's request to call Franklin Russell. Inmate Russell agreed to testify for plaintiff. It is unclear what Franklin Russell's testimony would have added to the hearing. In any event, the hearing documents contain a Witness Interview Notice which specifies the reason that Franklin Russell was denied as a witness. (Def.'s Ex. 2 at 27). The reason that HO Gutwein gave for the refusal to call Mr. Russell was that his name was not on the return address of the envelope. A witness may be denied for lack of necessity or irrelevance, or when his or her testimony would be duplicative or non-probative. *Cook v. Artus*, No. 15-CV-272A, 2016 WL 4540871, at *4 (W.D.N.Y. Aug. 26, 2016) (citations omitted).

Plaintiff claims that Mr. Russell's testimony was "material" because "[i]t could be" that Mr. Russell would have testified that he did not assist his son in completing the "alleged transaction and there could have been another explanation as to who sent the money and for a total innocuous reason." (Dkt. No. 33 at 15). Plaintiff's assertion is speculative, at best. The evidence showed that plaintiff admitted purchasing cigarettes for inmate Russell, and although inmate Russell testified that his father sent the money order, it was unclear from the envelope who "sent" the letter, and it appeared that inmate Russell was the sender. Franklin Russell's name was not on the envelope, and the hearing officer had admissions from both inmates. Calling inmate Russell's father

as a witness would have been unnecessary.  Thus, plaintiff's due process rights were not violated as a result of the disciplinary hearing, and defendant Prack did not affirm a constitutionally inadequate hearing.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 27) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 22, 2016

_____
**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**